**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------X

HERBERT F. WARRENDER,

                              **MEMORANDUM AND ORDER**
              Plaintiff,     09-CV-2697 (KAM)(LB)

   -against-

UNITED STATES, RAUL CAMPOS, IGNATIUS
HALL, JOHN SAINT-PREUX, MICHAEL
BERECKY, AND C. BROOKS,

             Defendants.

-------------------------------------X

**MATSUMOTO, United States District Judge:**

On June 1, 2009, Herbert F. Warrender ("plaintiff") commenced this *pro se* action against several individuals in their official and individual capacities at the Metropolitan Detention Center ("MDC") alleging constitutional violations pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) ("Bivens"), and tort claims pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*. Plaintiff allegedly sustained a seizure on April 1, 2008, that required hospitalization from April 1 to April 3, 2008, while a "holdover" inmate at MDC between March 28 and April 15, 2008.

Pending before the court is a motion to dismiss or, in the alternative, for summary judgment by defendants Michael

Berecky, C. Brooks, Ignatius Hall, Raul Campos, and John Saint-Preux (the "Individual Defendants"). For the reasons set forth below, the Individual Defendants' motion to dismiss and for summary judgment is granted. This opinion does not address any potential claims plaintiff has against defendant United States.

**BACKGROUND**

I. **Procedural History**

Plaintiff commenced this action *pro se* on June 1, 2009, against Harvey Lappon, Director of the Federal Bureau of Prisons ("BOP"), Henry Sadowski, Regional Counsel for the Northeast Regional Office of the BOP, Cameron Lindsay, Warden of MDC, Michael Berecky, physician at MDC, C. Brooks, physician's assistant at MDC, and John Does 1 and 2. The complaint alleges that defendants were negligent, committed medical malpractice, and were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth and Fourteenth Amendments. On June 30, 2009, the court granted plaintiff's motion to proceed *in forma pauperis*, directed that the United States be added as a defendant for purposes of plaintiff's claims under the FTCA, and dismissed defendants Lappon, Sadowski, and Lindsay from the case. (ECF No. 3, Memorandum and Order, dated June 30, 2009.)

The United States filed its answer on October 27, 2009, denying the plaintiff's allegations and asserting

affirmative defenses. (ECF No. 10, Answer, dated Oct. 27, 2009.) Defendants were ordered to identify the "John Doe" defendants, (ECF No. 21, Order, dated Nov. 30, 2009), and the United States subsequently identified Raul Campos, MDC Health Services Administrator, as John Doe #1, and John Saint-Preux and Ignatius Hall, MDC medical practitioners, as John Doe #2. (ECF No. 22, Defs. Letter, dated Dec. 28, 2009.) Campos, Saint-Preux, and Hall were then added as defendants in this matter.

The Individual Defendants served the instant motion on plaintiff on June 25, 2009 and reminded plaintiff that his responsive pleading was due by August 13, 2010. (*See* ECF No. 36.) Plaintiff failed to oppose the motion, despite twice being apprised of the briefing schedule. (ECF Nos. 35, 36.) Subsequently, on September 7, 2009, the Individual Defendants filed this unopposed motion via ECF. (*See generally* ECF No. 41, Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint or, In the Alternative, for Summary Judgment on Behalf of Defendants C. Brooks, Michael Borecky [sic], Raul Campos, Ignatius Hall, and John Saint-Preux ("Defs. Mot.").)

## II. **Undisputed Material Facts**

The following facts are taken from plaintiff's complaint and defendants' unopposed statement of material facts pursuant to Local Civil Rule 56.1.

Plaintiff is an inmate who was housed at MDC as a "hold-over" for approximately three weeks from March 28, 2008 to April 15, 2008. (ECF No. 41-3, [Defendants'] Local Rule 56.1 Statement ("Defs. R. 56.1 Stmt.") at ¶¶ 3, 9.) Plaintiff alleges that he was processed by MDC on March 28, 2008 and that either defendant Hall or defendant Saint-Preux performed a medical screening intake of plaintiff and received medical records and medication transported with plaintiff on that day. (*Id.* at ¶¶ 3, 4.) Plaintiff further alleges that on April 1, 2008, he saw defendant Brooks, an employee of the Public Health Service of the United States Department of Health and Human Services, who was assigned to the MDC, and informed her that he needed epilepsy medication, but defendant Brooks told plaintiff that he would need to wait to be seen until she reached his name on her alphabetized list. (*Id.* at ¶ 5; Declaration of Assistant United States Attorney Kelly Horan Florio ("Florio Decl.") ¶ 3; Florio Decl., Ex. A.) Later that day, plaintiff suffered a seizure and was taken to a local hospital. (Def. R. 56.1 Stmt. ¶ 6.) Plaintiff alleges that this seizure was the result of inadequate medical treatment by Berecky and Brooks. (*Id.* at ¶ 7.) Plaintiff was treated at the hospital and returned to MDC on April 3, 2008. (*Id.* at ¶ 6.) Plaintiff remained at MDC until April 15, 2008. (*Id.* at ¶ 9.)

Plaintiff made several complaints about the medical treatment he received and the injuries he suffered. Regarding his FTCA claims, plaintiff filed an administrative tort claim on form SF-95 on or about June 5, 2008, which was denied on December 2, 2008. (*Id.* at ¶ 11.) Plaintiff filed a second administrative tort claim on June 11, 2009, which was rejected as duplicative of his first claim and denied on December 8, 2009. (*Id.* at ¶ 12.) Regarding plaintiff's constitutional claims, on June 15, 2009, he filed a BP-9 administrative remedy request form seeking monetary compensation for injuries allegedly sustained during his April 2008 seizure. (*Id.* at ¶ 13.) This request was rejected as improperly filed. (*Id.* at ¶ 14.) On June 22, 2009 and July 16, 2009, plaintiff filed BP-10 and BP-11 administrative remedy request forms. (*Id.* at ¶ 15.) These forms were also rejected as improperly filed. (*Id.*)

## DISCUSSION

### I. Standards

#### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) Standard

Under Fed. R. Civ. P. 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject

5

matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Makarova*, 201 F.3d at 113. In deciding a Rule 12(b)(1) motion to dismiss, the court may rely on and refer to evidence outside the pleadings. *J.S.*, 386 F.3d at 110.

### B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) Standard

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citing *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir. 2001)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Additionally, as plaintiff is proceeding *pro se*, his complaint is held to less stringent standards than pleadings drafted by lawyers, *Pardus*, 551 U.S. at 94, and the court is

obliged to construe his pleadings liberally and to interpret them as raising the strongest arguments they suggest, *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006). Nevertheless, in order to defeat a motion to dismiss, the plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950 (2009).

### C. Summary Judgment Standard

A court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001).

Nevertheless, the nonmoving party cannot rest "merely on allegations or denials" but must instead "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Nat'l Westminster Bank USA v. Ross*, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) ("Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact."); *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture is [sic] insufficient to preclude the granting of the motion.").

Nor can the nonmoving party rest only on the pleadings. *Celotex*, 477 U.S. at 324 ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings."); *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). Instead, each statement of material fact by the movant or opponent must be followed by citation to evidence which would be admissible, as required by Fed. R. Civ. P. 56(e) and Local Civil Rule 56.1(d). Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, . . . or is not

significantly probative, . . . summary judgment may be granted."
*Id.* at 249-50 (internal citations omitted).

II. **Analysis**

   A. **Statutory Immunity**

   Defendant Brooks argues that she is entitled to absolute immunity from suit pursuant to 42 U.S.C. § 233(a) because the exclusive remedy for constitutional or tort claims arising out of alleged wrongdoing by an employee of the United States Department of Health and Human Services Public Health Services ("PHS") is against the United States under the FTCA. (ECF No. 41, Defs. Mem., at 9-10.) As discussed above, defendants' motion is unopposed.

   Defendant Brooks correctly states that under 42 U.S.C. § 233(a), a plaintiff's exclusive remedy for acts or omissions related to medical care provided by an employee of PHS is under the FTCA. 42 U.S.C. § 233(a) ("The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 [the Federal Tort Claims Act], . . . for damage for personal injury, including death, *resulting from the performance of medical, surgical, dental, or related functions* . . ., by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding . . . ."). The Second Circuit has held that § 233(a) extends to alleged

constitutional violations, shielding PHS employees from *Bivens* actions arising out of their employment duties. *See Cuoco v. Moritsugu*, 222 F.3d 99, 107-08 (2d Cir. 2000) (holding that defendants, employees of Public Health Services, had statutory immunity under 42 U.S.C. § 233(a) from plaintiff's constitutional tort claims arising from allegedly deficient medical care provided to her while incarcerated because defendants' actions occurred in their capacity of rendering medical treatment to plaintiff). The purpose of the immunity is to protect "commissioned officers or employees of the Public Health Service from being subject to suit while performing medical and similar functions by requiring that such lawsuits be brought against the United States instead." *Id.* at 108. The critical determination is not only that defendant is a member of PHS, but also whether "the injury for which [plaintiff] seeks compensation was one 'resulting from the performance of medical . . . or related functions' by [defendants] while acting within the scope of their offices or employment." *Id.* at 107.

Here, it is undisputed that defendant Brooks was a member of PHS at the time of the events plaintiff complains of. (*See* Florio Decl., Ex. A, personnel order assigning defendant Brooks to MDC as of Nov. 13, 2006.) Further, it is undisputed that plaintiff's alleged injury arises from acts or omissions allegedly committed by Brooks in her performance of medical

10

functions, as a physician's assistant assigned to the MDC; specifically, plaintiff alleges that Brooks delayed in providing plaintiff with epilepsy medication. Accordingly, plaintiff's exclusive remedy for injuries caused by defendant Brooks' behavior is against the United States under the FTCA. *See, e.g., Dowdy v. Hercules*, No. 07-CV-2488, 2010 U.S. Dist. LEXIS 3263, at *21-22 (E.D.N.Y. Jan. 13, 2010) (finding that § 233(a) barred plaintiff's claims against PHS employees for their alleged delay in diagnosing and treating plaintiff for tuberculosis); *Geralds v. Patel*, 08-CV-0104, 2009 U.S. Dist. LEXIS 14721, at *3 (E.D.N.Y. Feb. 20, 2009) (finding that § 233(a) barred plaintiff's claims against MDC dentist for failure to provide adequate dental care). The court grants defendant Brooks' motion to dismiss or in the alternative for summary judgment.

### B. Personal Involvement

Defendants Campos, Hall, and Saint-Preux argue that plaintiff's claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because plaintiff does not allege that they were personally involved in an alleged violation of plaintiff's constitutional rights. For the reasons set forth below, the court agrees.

In *Ashcroft v. Iqbal,* the Supreme Court held that "[b]ecause vicarious liability is inapplicable to *Bivens* and

11

§ 1983 suits, the plaintiff . . . must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." 129 S. Ct. 1937, 1940 (2009). The Supreme Court explicitly rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Id.* at 1949. Thus, "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*[1]

Here, as defendant Campos points out, plaintiff's complaint mentions him only once, to identify him as the Health

---

[1] Rather than citing to *Iqbal,* defendants cite *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), in support of their argument that a supervisory official is deemed personally involved in committing an alleged constitutional violation when that official: (1) participated directly in the alleged constitutional violation; (2) failed to remedy the violation after being informed of the violation through a report or appeal; (3) created or allowed the continuation of a policy or custom under which unconstitutional practices occurred; (4) acted with gross negligence in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. Although the Second Circuit has not ruled on the precise issue of whether any of the *Colon* categories remain viable after *Iqbal, see Sash v. United States*, 674 F. Supp. 2d 531, 543 (S.D.N.Y. 2009), the court agrees with other courts in this district which have found that most of the *Colon* categories have been superseded by *Iqbal. See, e.g., Bellamy v. Mount Vernon Hosp*., 07 Civ. 1801, 2009 U.S. Dist. LEXIS 54141, at *27-28 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third *Colon* categories pass *Iqbal's* muster -- a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred. The other *Colon* categories impose the exact types of supervisory liability that *Iqbal* eliminated -- situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate."). Accordingly, the proper standard under which to view plaintiff's allegations is prescribed by the Supreme Court in *Iqbal* rather than the Second Circuit's earlier decision in *Colon.*

Services Administrator at MDC during the relevant period.  (*See* ECF No. 1, Complaint, at 2; ECF No. 41, Defs. Mem., at 11.)  The complaint does not assert that defendant Campos had any personal involvement with plaintiff or his medical treatment at any time.  (*See generally* ECF No. 1, Complaint.)  Accordingly, the court finds that plaintiff has not sufficiently alleged that defendant Campos was personally involved in an alleged violation of plaintiff's constitutional rights.  Because there is no *respondeat superior* liability for a constitutional violation, the claims against defendant Campos must be and are dismissed.

With respect to defendants Hall and Saint-Preux, plaintiff alleges that one of them conducted plaintiff's medical intake screening on March 28, 2008 and should have received the medical records and/or medications that plaintiff alleges were transported with him.  (ECF No. 1, Complaint, at 4.)  In response, defendants argue that plaintiff's complaint "fails to allege that defendants Hall or Saint-Preux had any involvement in [the] violations or that those defendants conducted the medical intake screening improperly."  (ECF No. 12, Defs. Mem., at 11-12.)  The court agrees.  Plaintiff does not allege that he requested and was denied medication from Hall or Saint-Preux, nor that they conducted the intake medical examination with deliberate indifference to plaintiff's serious medical needs.  Although plaintiff presumes that defendants would have received

13

his medical records and should have seen that he was prescribed epilepsy medication, he provides no allegations or evidence as to Hall or Saint-Preux. Accordingly, plaintiff's claims against defendants Hall and Saint-Preux are dismissed.[2]

### C. Exhaustion of Administrative Remedies under the PLRA

Defendants Berecky, Campos, Hall, and Saint-Preux argue that they entitled to summary judgment pursuant to Fed. R. Civ. P. 56 because plaintiff failed to exhaust his administrative remedies under the PLRA. Based on plaintiff's previous experience filing 13 administrative BOP complaints, defendants argue that plaintiff had "obvious knowledge of the PLRA exhaustion requirements," but "failed to file any administrative remedy request form (BP-9, BP-10, or BP-11) concerning the [alleged conduct giving rise to this action] prior to June 15, 2009, approximately two weeks after filing the instant action and over one year after the alleged incidents arose." (ECF No. 41, Defs. Mem., at 14.) Because a petitioner must exhaust his administrative remedies prior to the

---

[2] The court has considered whether it should grant plaintiff leave to amend his complaint to allege the personal involvement of each Individual Defendant. Under Rule 15(a), leave to amend shall be freely granted. Only where the amendment would be futile, there has been undue delay, bad faith, a dilatory motive on the part of the movant, a repeated failure to cure deficiencies by amendments previously allowed, or where undue prejudice to the opposing party by virtue of allowance of the amendment would occur should leave be denied. *Forman v. Davis*, 371 U.S. 178, 182 (1962). The court concludes that in this case, leave to amend would be futile because there are no facts that plaintiff could allege to overcome his failure to exhaust administrative remedies as required by the PLRA, discussed *infra.*

14

commencement of an action in district court, the Individual Defendants argue that plaintiff's *Bivens* claims should be dismissed. (*Id.* at 14-15.) Although plaintiff did not respond to defendants' motion, in the memorandum accompanying his complaint, plaintiff argued that he tried to exhaust his administrative remedies, and his failure to do so should be excused because it would have been futile. (ECF No. 1, Complaint, at 19.) For the reasons set forth below, the court finds that plaintiff has not exhausted his administrative remedies and that his failure to do so cannot be excused on grounds of futility.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under . . . [section] 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA exhaustion requirement applies to any suit challenging prison conditions, including constitutional claims based on § 1983 and *Bivens* lawsuits. *Porter v. Nussle,* 534 U.S. 516, 524 (2002) ("Thus federal prisoners suing under *Bivens* . . . must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit."). Moreover, § 1997e(a) "applies to all inmate suits about prison life, whether they involve general

15

circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532. Exhaustion of administrative procedures is a prerequisite even where the plaintiff seeks relief, such as money damages, not available in grievance proceedings. *Id.* at 524.

The inmate grievance program required for prisoners in the custody of the Federal Bureau of Prisons is set forth in 28 C.F.R. § 542.10(a). The administrative review process mandates that an inmate first report the issue informally to the prison staff, and the staff should attempt to resolve the issue. *Id.* at § 542.13(a). If the inmate is dissatisfied with the staff's resolution, the inmate can then pursue the formal three-tiered administrative remedy process set forth at 28 C.F.R. § 542.10-16, beginning with filing the BP-9 administrative remedy request form.

Here, assuming for the benefit of plaintiff, that plaintiff made an informal complaint and was dissatisfied with the resolution of that process, in order to continue to pursue his *Bivens* claims against the Individual Defendants for allegedly providing inadequate medical treatment, plaintiff was required to file a BP-9 administrative remedy request form within twenty days of the date on which the basis for the request occurred. 28 C.F.R. § 542.14. Here, however, plaintiff did not file a BP-9 until June 15, 2009, over fourteen months

from the date of the incident of April 1, 2008, and two weeks after he commenced the instant suit in federal court.[3] (Defs. R. 56.1 Stmt. at ¶ 13.)

Furthermore, the court is not persuaded by plaintiff's argument that filing a grievance would have been "futile." (*See* ECF No. 1, Complaint, at 19 (citing *Warren v. Purcell,* No. 03 Civ. 8736, 2004 U.S. Dist. LEXIS 17792 (S.D.N.Y. Sept. 3, 2004).) Other than citing cases stating the principle that exhaustion may be excused for futility in certain circumstances, plaintiff does not allege or provide evidence of any reason why adherence to the administrative remedy process would have been futile in this case. In addition, it is undisputed that plaintiff previously filed thirteen administrative complaints in the past, which undercuts his argument that the process was too

---

[3] Although plaintiff filed an administrative tort claim on form SF-95 on June 5, 2008, this form only satisfied the administrative pre-requisites for plaintiff's FTCA claims against the United States and does not cure his failure to exhaust administrative remedies with respect to his *Bivens* claims against the Individual Defendants. *See generally Accolla v. United States Gov't*, 668 F. Supp. 2d 571 (S.D.N.Y. 2009) (noting the difference between the SF-95, which is required for FTCA claims, and the BP-9, which is required for *Bivens* claims); *see also Dunster v. Fed. Bureau of Prisons*, No. 10 CV 1735, 2010 U.S. Dist. LEXIS 69027, at *1 (E.D.N.Y. June 17, 2010) ("[Plaintiff] must exhaust the administrative remedies at his facility (by pursuing grievances BP-9 through 11) before bringing a civil rights action in federal court against persons acting under color of federal law. . . . [If plaintiff] intends to bring an action against the United States, he must file an administrative claim (form SF-95) before he may bring a Federal Tort Claims Act case."). Furthermore, the Second Circuit has rejected the argument that "[plaintiff] procedurally exhausted his [*Bivens*] claims because his informal complaints and administrative tort claims put the prison on notice of the nature of his grievance." *Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

difficult for him to understand.  Finally, the mere fact that plaintiff believed that nothing would come of his administrative complaint is not sufficient to establish futility.  *See Indelicato v. Suarez*, 207 F. Supp. 2d 216, 220 n.3 (S.D.N.Y. 2002).  Accordingly, in addition to the reasons set forth above, plaintiff's complaint against the Individual Defendants is dismissed failure to exhaust administrative remedies.

### D. Lack of Subject Matter Jurisdiction and Sovereign Immunity

Finally, the Individual Defendants argue that plaintiff's claims against them must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because (1) § 1983 provides relief only against defendants who act under color of state, not federal, law; and (2) to the extent they are sued in their official capacities, sovereign immunity bars plaintiff's *Bivens* claims. (*See* ECF No. 41, Defs. Mot., 7-9.)  Plaintiff does not address this argument in his complaint.  The court agrees with the Individual Defendants.  *See Wheeldin v. Wheeler*, 373 U.S. 647, 650 n.2 (1963) (holding that federal officers are not liable under § 1983); *FDIC v. Meyer*, 510 U.S. 471, 478 (1994) (*Bivens* suits against the United States are barred under the doctrine of sovereign immunity, unless immunity is waived).

## CONCLUSION

For the foregoing reasons, the Individual Defendants' motion to dismiss or, in the alternative, for summary judgment, is granted. The complaint is dismissed against defendants Berecky, Brooks, Hall, Campos, and Saint-Preux. The United States Attorney's Office is ordered to serve a copy of this Memorandum and Order on the plaintiff and file a declaration of service by February 18, 2011. The remaining parties are directed to confer and submit a joint status report to the court by March 11, 2011.

**SO ORDERED.**

Dated: February 17, 2011
      Brooklyn, New York

                                                _____/s/_____
                                                KIYO A. MATSUMOTO
                                                United States District Judge
                                                Eastern District of New York